Argued and submitted January 16, affirmed in part;
reversed in part July 6, 1981

In the Matter of the Compensation
of Boyd Bault, Claimant.

**BAULT,**
*Petitioner,*

*v.*

.TELEDYNE WAH-CHANG,
*Respondent.*

(WCB No. 77-6376, CA 18811)

630 P2d 1315

Robert W. Muir, Albany, argued the cause for petitioner. With him on the brief was Emmons, Kyle, Kropp & Kryger, P.C., Albany.

Margaret Leiberan, Portland, argued the cause for respondent. With her on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Joseph, Chief Judge, and Buttler and Warden, Judges.

JOSEPH, C. J.

### JOSEPH, C. J.

■ The issue is whether claimant proved that his back condition was aggravated by his work. The referee ordered the claim accepted. The Board reversed, holding that claimant had failed to establish the aggravation by a preponderance of the evidence, but awarded penalties for unreasonable delay in denying the claim and temporary total disability benefits from the date claimant quit work to the date the claim was denied. Claimant appeals. The issue is purely factual.

Claimant's job required him to move barrels of coke weighing about 450 pounds. One day, as he was moving a barrel, his back wrenched. That is the only incident to which he could later attribute his problem. He continued to work and did not report the incident until 5 days later. He saw Dr. Neal, who diagnosed low back strain and treated him with exercises and pain medication. On May 19, 1976, claimant was released for light duty; he was assigned to lighter work for six weeks. On July 1 his X-rays were normal and no permanent impairment was found. After an original denial of the claim, a determination order issued awarding time loss, but finding no permanent disability.

Claimant returned to his old work, where it was no longer necessary for him to move barrels, but in December he began stockpiling ground coke. That again required him to put barrels onto pallets but did not entail removing them from pallets, which was harder on his back. That lasted six weeks. While claimant noted some effect on his back pain, he continued to work without reporting the pain. In June, 1977, he began work stockpiling oxide in barrels, which required similar exertion.

In early July claimant's union went on strike. That was settled on August 27, but he did not immediately return to work. On September 5, claimant, who had been at the coast attending his sick mother-in-law, quit his job, saying only that he had decided to move to the coast. He told the Employment Division he quit because of his back, which was found to constitute good cause to quit and to

entitle him to unemployment benefits.[1] The order allowing unemployment compensation was sent to the employer on September 14.

On September 7, claimant contacted Dr. Neal and told him he was unable to return to his job. It was later learned by deposition that he had not been examined then, but had merely telephoned and described his complaints, saying there had been no specific traumatic incident but that lifting barrels and walking 100 yards on concrete to and from his work station had made his back condition too painful to continue. Based on this conversation, Dr. Neal reported to claimant's attorney that claimant

> "* * * came in on 9/7/77 saying that he was quitting the job and trying to get some lighter work because his back was continuely [sic] aggravated by the kind of work he was doing at Wah Chang, which at times was quite heavy. It involved stooping and lifting barrels which weigh 450 pounds.
>
> "He was advised that I felt he should probably go through vocational rehabilitation to be retrained for a lighter type of work. I don't think that any further treatment would be beneficial for his back. It has been bothering him for over a year, and in chronic back conditions the prognosis is poor for a complete recovery."[2]

Later, in answer to an inquiry from claimant's attorney, Dr. Neal responded affirmatively to a question whether the back condition attributable to the 1976 injury was "materially aggravated or worsened following his return to work."

On October 13, 1977, the employer denied the aggravation claim:

> "This request comes as a surprise since you had advised that you were leaving * * * to live on the Coast near relatives. Since you are alleging that your condition at this time is due to your employment, we must conduct a medical and factual investigation and, therefore, are not in the position to extend benefits to you at this time pending the

---

[1] Claimant testified he quit on the advice of his doctor, which was neither corroborated nor denied by Dr. Neal, who was not questioned on the matter.

[2] He wrote essentially the same thing in January, 1978, to the Vocational Rehabilitation Division.

results of that work-up. Thus, we must advise that your case presently is denied and by copy of this letter, those interested in this decision are so being advised."

In March, 1978, Dr. Neal examined claimant and noted some slight objective changes in his back X-rays, although his complaints were mainly subjective. Range of motion was 80 percent of normal "in all modalities." Dr. Neal testified that the objective manifestations of chronic back strain are present in only about 10 percent of such cases. Therefore, it is customary to rely on subjective complaints. He found claimant was "hurting in the right places." In May, 1978, he again noted that claimant's complaints were mostly subjective.

On January 30, 1978, Dr. Kaye diagnosed chronic sacroiliac strain. He recommended intensive physical therapy and exercises and opined that the condition could be improved, but not entirely cured, by that treatment. In May, 1979, at the employer's request, claimant was examined by Dr. Martens, who diagnosed lumbosacral strain and restricted claimant's subsequent work activities to those involving no bending, twisting or lifting of more than 30 pounds.

Following quitting work, claimant did very little for a year. In the fall of 1978, he obtained work baling firewood for Fred Meyer, Inc. Apparently that job was not permanent. Since then, he and his wife have earned money gathering and drying moss, which is seasonal and less than full-time work. Claimant testified that he rakes moss from trees and rests while his wife gathers it. That occupies a typical morning; both nap when they return home and dry and bale the moss in the afternoon. He said that walking on soft ground is not nearly as bothersome as walking on concrete.

Claimant is an avid hunter, has done some hunting each year since 1976 and plans to continue. His hunting expeditions are all in the vicinity where he lives and do not require a lot of walking, but he testified that restrictions on his hunting have increased with the severity of his back problem. He has ridden horses three times since his May, 1976, injury, each time painfully, and has also taken three long automobile trips. His other travels have been in the

local area, with an occasional trip to Albany where he formerly lived.

His former supervisors testified that no mention had ever been made of claimant's back problem after the original injury and his return to work. They testified he said nothing about his back when his termination was discussed; the only reason given was the illness of his mother-in-law. One also stated that, after he took over the job (in April, 1977), he asked if the men in his department would prefer to rotate jobs. Claimant voted not to change.

The referee observed that the unanimous and unequivocal medical testimony, including one report from the doctor who examined claimant for the employer, was that claimant's back condition had become chronic and necessitated the imposition of restrictions on lifting and bending. It is undisputed that the claim for the 1976 injury was accepted and a determination made of no permanent disability. Dr. Neal stated that prognosis for complete recovery was poor, and Dr. Kaye questioned whether treatment of any kind could totally cure him. Dr. Neal's opinion was weakened somewhat by the fact that it was based almost entirely on subjective complaints, but his diagnosis was confirmed by two other doctors. Furthermore, the referee considered claimant credible and concluded his reports of pain were not exaggerated.

■   The evidence establishes permanent disability where there was none after the original injury, which was concededly work-related. It is compensable as an aggravation. ORS 656.273(1). Lack of substantial objective signs of the condition and Dr. Neal's failure actually to examine claimant in September, 1977, do not detract from our conclusion.

The order of the Board is reversed insofar as it reversed the referee's order that the aggravation claim be accepted, that benefits be paid accordingly and that claimant's attorney be paid a fee. In all other respects, the order is affirmed.

Affirmed in part; reversed in part.